UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ROBERT W. RICHARDS
and
LINDA M. RICHARDS,

Debtors.
_______________________________________/

Case No. 12-61840

Chapter 13

Judge Thomas J. Tucker

ROBERT W. RICHARDS
and
LINDA M. RICHARDS,

Plaintiffs,

vs.

Adv. Pro. No. 12-5966

COMMUNITY CHOICE CREDIT UNION,

Defendant.
_______________________________________/

**TRIAL OPINION**

**I. Introduction**

In this adversary proceeding, Plaintiffs Robert W. Richards and Linda M. Richards ("Plaintiffs"), who are the Debtors in a pending Chapter 13 bankruptcy case, seek a judgment determining that in their proposed Chapter 13 plan, they may treat as a wholly unsecured claim the claim of the Defendant Community Choice Credit Union ("Defendant"). Defendant's claim against Plaintiffs is secured by a second mortgage on Plaintiffs' home, located at 1100 Baker Road in Rose Township, Michigan (the "Property"). Plaintiffs allege that as of the bankruptcy petition date, the value of the Property was less than the balance owing on the first mortgage on the Property. Defendant disputes this.

The Court held a bench trial on May 21, 2013, then took this adversary proceeding under advisement. The Court has carefully considered all of the arguments and evidence presented by the parties at trial. This opinion states the Court's findings of fact and conclusions of law.

For the reasons stated in this opinion, the Court finds for the Plaintiffs, and will enter a judgment in Plaintiffs' favor.

**II. Background**

Most of the facts are undisputed. To begin with, the parties have stipulated to the following facts, as stated in the Final Pretrial Order, filed March 11, 2013:

> a. The Plaintiffs are the owners of the real property commonly known as 1100 Baker Rd., Fenton, MI 48430 ("Property").[1]
>
> b. On June 24, 2003, the Plaintiffs obtained a loan from ABN AMRO MORTGAGE in the amount of $176,000.00 and as collateral [gave] a mortgage on the Property, which was recorded on September 18, 2003. The mortgage was subsequently transferred to CitiMortgage.
>
> c. On March 6, 2006, the Plaintiffs obtained a future advance mortgage from Defendant COMMUNITY CHOICE CREDIT UNION with a limit of $94,000.00 and as collateral granted COMMUNITY CHOICE CREDIT UNION a mortgage on the Property, which was recorded on March 13, 2006.
>
> d. On September 28, 2012, the Plaintiffs filed for relief under Chapter 13 of the Bankruptcy Code.
>
> e. On November 12, 2012, Plaintiffs filed an adversary complaint to strip Defendant's mortgage on the subject property.
>
> f. To date, CitiMortgage has not filed a Proof of Claim.
>
> g. Defendant filed a secured Proof of Claim (Claim 4) on

[1] The Property has a mailing address of Fenton, Michigan, but it is located in Rose Township, Michigan.

November 16, 2012 in the total amount of $93,998.33.

h. The mortgage held by CitiMortgage is senior to the mortgage held by Defendant.[2]

In Plaintiffs' Chapter 13 plan, filed on September 28, 2012, Plaintiffs propose to treat Defendant's claim as a wholly unsecured claim.[3] The Plan thus proposes to treat Defendant's claim as all other general unsecured claims, in Class Eight, by paying a minimum dividend of 0% of the allowed claim, with no interest, over the life of the Plaintiffs' 36-month Plan.[4]

As the issue has been framed by the parties, Plaintiffs had the burden at trial of proving, by a preponderance of the evidence, that the value of the Property as of the September 28, 2012 petition date was equal to or less than the balance owing on the first mortgage debt (held by CitiMortgage) as of the petition date, which (as the Court finds in Section IV of this opinion below,) was $158,008.64. *See generally* 11 U.S.C. §§ 506(a)(1) and 506(d); *Lane v. Western Interstate Bancorp*, 280 F.3d 663 (6th Cir. 2002). If Plaintiffs met that burden at trial, they must prevail in this adversary proceeding. If Plaintiffs did not meet that burden, then Defendant must prevail.

---

[2] Final Pretrial Order (Docket # 14) at 2, ¶ 4.

[3] *See* Chapter 13 Plan (Docket # 2 in Case No. 12-61840, the "Plan") at 2 § I.D.5 (under "Class Five").

[4] *See id.* at 3, § I.D.8 (under "Class Eight"), which states that "General Unsecured Claims" will:

> be paid 0 % of such amounts with interest at the rate of 0.00 % per annum. This Plan shall provide either the percent stated or shall continue for the length stated, whichever will offer the greater dividend to general unsecured creditors in this class.

## III. Jurisdiction

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a)(E.D. Mich.). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(K), 157(b)(2)(L), and 157(b)(2)(O).[5]

This proceeding also is "core" because it falls within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created or determined by a statutory provision of title 11," *see id.*, including Bankruptcy Code § 506. And this is a proceeding "arising in" a case under title 11, because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *See id.* at 27.

## IV. Discussion

The Court begins by noting that in the absence of any recent, actual arms-length sale of the Property, determining the value of the Property is not something that can be done with any sort of scientific precision or certainty. It necessarily involves some uncertainty. But the Plaintiffs need not prove the value of the Property with certainty, or beyond a reasonable doubt. They merely need to prove it by a preponderance of the evidence.

The Court has considered all of the arguments and evidence presented at trial. The trial

---

[5] The parties have agreed that this Court has subject matter jurisdiction, and that this is a core proceeding. *See* Final Pretrial Order at 1.

evidence consisted of Plaintiffs' Exhibits 1 through 4; Defendant's Exhibits A through C;[6] and the testimony of four witnesses: Plaintiffs' appraiser, Jeffrey M. Burroughs; Plaintiff Linda M. Richards; Defendant's employee Carol Truesdell; and Defendant's appraiser, Rick L. Henry. The Court also has considered certain items filed in this adversary proceeding and in the Plaintiffs' Chapter 13 case, as indicated by the Court's citation to those items in this opinion.

Based on the evidence presented, the Court finds and concludes that Plaintiffs have met their burden of proof, and that as of the September 28, 2012 petition date the value of the Property was less than $158,008.64 (and therefore less than the balance owing on the first mortgage). The Court further finds and concludes that the value of the Property as of the petition date was not more than $155,233.00.

The Court finds that $158,008.64 was the balance owing by Plaintiffs to CitiMortgage on the first mortgage on the Property, as of the September 28, 2012 petition date. In so finding, the Court relies on a loan modification agreement between Plaintiffs and CitiMortgage that was filed in Plaintiffs' Chapter 13 case on November 2, 2012.[7] That agreement states that as of October 1,

---

[6] Sometimes in this opinion, the Court will cite the exhibits using this format: "PX-_" for a Plaintiffs' exhibit; and "DX-__" for a Defendant's exhibit.

[7] This Loan Modification Agreement was attached to a motion filed by Plaintiffs in the Chapter 13 case, entitled "Motion to Allow Debtors to Complete Loan Modification Agreement with CitiMortgage, Inc. or its Assigns," filed November 2, 2012 (Docket # 15 in Case No. 12-61840). The Court later granted that motion, in an order filed on November 21, 2012 (Docket # 22 in Case No. 12-61840).

During closing argument, Plaintiffs' counsel asked the Court to take judicial notice that this document had been filed in the Plaintiffs' Chapter 13 case (which the Court now does,) and to consider it in determining the balance owing on the first mortgage as of the petition date. The Court had first raised this document and what it said about the first mortgage balance as of October 1, 2012, during opening statements. Defendant's counsel did not object, at any time during the trial, to the Court taking judicial notice of this document or considering it for purposes of determining the first mortgage loan balance as of the petition date.

2012 (three days after the petition date,) Plaintiffs' balance owing on the first mortgage loan was $158,008.64.[8]

In making its findings and conclusions about the value of the Property, the Court relies heavily on its review of the testimony of the two appraisers, Mr. Burroughs and Mr. Henry, and their detailed appraisal reports (Plaintiffs' Exhibit 1 and Defendant's Exhibit C, respectively).[9] Each appraiser used the same basic method for appraising the Property — each used the sales comparison approach.[10] Plaintiffs' appraiser Mr. Burroughs opined that the value of the Property was $146,000.00 as of February 6, 2012, the date of his appraisal, and also as of the September 28, 2012 petition date. Defendant's appraiser Mr. Henry opined that the value of the Property was $160,000.00 as of December 10, 2012, the date of his appraisal, and also as of the petition date.

To support his opinion, each appraiser in his report and testimony presented detailed information about several sales that occurred during 2011 and 2012, of comparable other properties in the area of the subject Property. As to each such comparable sale, each appraiser

---

[8] *See* Loan Modification Agreement, *supra*, at 1 ¶¶ 1-2.

[9] Although Plaintiff Linda Richards also testified, including testimony about the features and condition of the Property, she did not offer her opinion of the value of the Property.

[10] Mr. Henry's appraisal report also discusses value based on a "Cost Approach to Value," DX-C, fifth page, and Mr. Henry briefly mentioned this in his testimony. But neither Mr. Henry nor any other witness presented any evidence describing this valuation method in any detail, or tending to show that it was a reliable method of valuation of the Property in this case. For these reasons, the Court gives the meager evidence regarding the Cost Approach no weight.

Similarly, the Court gives no weight to the Property's "State Equalized Value," *see* PX-4; or to the "Home Value Explorer" document discussed during the testimony of Carol Truesdell. *See* DX-B. The evidence at trial did not demonstrate that either of these sources is a reliable indicator of the value of the Property at issue in this case; if anything, the evidence demonstrated the contrary.

took the sale price of the property and made upward and downward adjustments to the sale price, to account for differences between the comparable property and Property at issue in this case. For each comparable, that exercise yielded an adjusted sale price, which then was considered in determining the value of the subject Property.

The following table lists the sale price and adjusted sale price, and limited other information, for each comparable sale used by the appraisers in this case.[11] For the one comparable sale that was used by both of the appraisers, they are lined up side by side:

| Jeffrey M. Burroughs<br>**D/or's Appraisal (PX-1)**<br>opinion of value: $146,000<br>Comps: | | Rick L. Henry<br>**Credit Union's Appraisal (DX-C)**<br>opinion of value: $160,000<br>Comps: | |
|---|---|---|---|
| Sale 1 | | Sale 2 | |
| 13485 Lakebrook Dr | | 20050 Rose Bush Ln | |
| Tyrone Twp | | Holly, MI (Rose Twp) | |
| sale price | $159,900 | sale price | $199,000 |
| date of sale 12/2/11 | | date of sale 7/9/12 | |
| adjusted sale price | **$145,900** | adjusted sale price | **$170,800** |
| Sale 2 | | Sale 3 | |
| 18584 Tipsico Lake Rd | | 1270 Parker Rd | |
| Tyrone Twp | | Holly, MI (Rose Twp) | |
| sale price | $159,900 | sale price | $139,900 |
| date of sale 11/11/11 | | date of sale 2/27/12 | |
| adjusted sale price | **$146,900** | adjusted sale price | **$150,300** |
| Sale 3 | | Sale 4 | |
| 9045 Hickory Ridge Rd | | 1150 Demode Rd | |
| Rose Twp | | Holly, MI (Rose Twp) | |
| sale price | $150,000 | sale price | $135,000 |
| date of sale 9/16/11 | | date of sale 12/14/12 | |
| adjusted sale price | **$146,000** | adjusted sale price | **$150,900** |

[11] This table does not list all of the adjustments or other information in the appraisal reports about these comparable sales/properties, although the Court considered all such information carefully in making its decision.

| **Sale 4 (listing at time; later sold 4/11/12)** | | **Sale 1 (Burroughs also used this one)** | |
|---|---|---|---|
| 17231 Williams Dr | | 17231 Williams | |
| Rose Twp | | Holly, MI (Rose Twp) | |
| sale price | $159,900 | sale price | $159,900 |
| date of sale ___ | | date of sale 4/11/12 | |
| adjusted sale price | **$146,400** | adjusted sale price | **$154,700** |
| | | Sale 5 | |
| | | 1368 Bone Rd. | |
| | | Holly, MI (Rose Twp) | |
| | | sale price | $177,000 |
| | | date of sale 9/4/12 | |
| | | adjusted sale price | **$160,100** |

In considering these comparable sales, the Court makes the following adjustments of its own, based on the evidence presented.

First, the Court will disregard each of the following sales, because they occurred too long before the September 28, 2012 petition (and relevant valuation) date: Burroughs's Sale nos. 1, 2 and 3 (they closed from 10 months to 12.5 months before September 28, 2012); and Henry's Sale no. 3 (it closed about 7 months before September 28, 2012). The Court finds that the age of these sales, as measured by comparing their closing dates to September 28, 2012, makes them unreliable as indicators of value as of September 28, 2012. This is particularly so given Mr. Henry's testimony that from year-end 2011 to year-end 2012, average home prices increased in the three-county area of the Property, substantially (10.9 % in Livingston County; 11% in Genesee County; and 18.5% in Oakland County); but there was no evidence presented about how much of that increase occurred by September 28, 2012. The market prices of homes therefore was changing, generally increasing, substantially over the several months before, and in the months after, September 28, 2012, but as to how much during particular months during

this time period, no evidence was presented.

Second, the Court agrees with the opinion of Mr. Burroughs, expressed in his testimony during the Plaintiffs' rebuttal case, that Mr. Henry's comparable Sale no. 2 is of a property that is too dissimilar to the Plaintiffs' Property to be reliably considered a "comparable" sale.[12] So the Court will disregard Mr. Henry's Sale no. 2.

The foregoing leaves the Court with the adjusted sale prices for the following three comparable sales relied on by Mr. Henry in his report and testimony: Mr. Henry's Sale nos. 1, 4, and 5. Of these, Mr. Burroughs's report and testimony also relied on the property in Mr. Henry's Sale no. 1 (this was Mr. Burroughs's Sale no. 4), although the two appraisers came to different adjusted sale prices for this property. The Court finds that it is fair and appropriate to consider these three comparable sales. These are included in the table above. Using only Mr. Henry's adjusted sale price for the one property that both appraisers used (*i.e.*, Mr. Henry's Sale no. 1), the adjusted sale prices for these properties are $150,900; $154,700; and $160,100 (Sale nos. 4, 1, and 5, respectively). These average $155,233.00. (If the Court used Mr. Burroughs's lower adjusted sale price for his Sale no. 4 (Henry's Sale no. 1), of $146,400, of course, the $155,233.00 average would be lower, namely, $152,467.00.)

Based on the foregoing, the Court finds that the value of the Property as of the petition date was not more than $155,233.00. This, of course, is less than the $158,008.64 balance that

---

[12] This is the property which, as Mr. Henry testified, has a large open floor plan on the inside, which makes it quite unlike the Plaintiffs' Property. Mr. Henry's appraisal report made a large, $10,000 "Design (Style)" adjustment to the sale price of the Sale no. 2 property because of this difference. See DX-C, third page. This large adjustment, particularly when combined with the total of $15,000 in adjustments that Mr. Henry felt obliged to make for "Actual Age" and "Condition" differences between the Sale no. 2 property and Plaintiffs' Property, makes these two properties too dissimilar to be comparable.

Plaintiffs owed to CitiMortgage on the first mortgage loan as of the petition date.

**V. Conclusion**

Based on the findings of fact, conclusions of law, and the reasons stated in this opinion, the Court will enter judgment for Plaintiffs. This is a close case, but Plaintiffs have met their burden of proof.

No later than May 30, 2013, counsel for Plaintiffs must submit a proposed judgment that is consistent with this opinion, and that includes the language and form (adapted to this case) that the Court requires for lien-strip default judgments in Chapter 13 cases, found in Guideline 12 to the Court's local rules. The Court waives presentment of such proposed judgment.

**Signed on May 25, 2013**

**/s/ Thomas J. Tucker**
**Thomas J. Tucker**
**United States Bankruptcy Judge**